## Commonwealth ex rel. v. Kelley

*Herbert C. Nelson*, for relator.

*J. Stroud Weber*, for Commonwealth.

CORSON, J., June 9, 1955.—Clifford Jenkins escaped from a Georgia prison after serving seven years of a 20-year sentence for attempted rape. He eventually

made his way to Pennsylvania and in 1953 he was sentenced to the Montgomery County Prison for two years for burglary committed in Pottstown, Montgomery County, Pa. This two-year term expired in February of this year. However, extradition proceedings had been instituted by the State of Georgia and a detainer sent to Warden Reilly of the county prison. As a result of this detainer, Jenkins was not released when his term expired and Jenkins was held for extradition to Georgia on the authority of the detainer, extradition requisition and warrant of the Governor of Pennsylvania. Challenging the validity of the extradition papers and the proceedings which led up to the demand, Jenkins brought a writ of habeas corpus against Warden Reilly. This original writ was dismissed, and Jenkins was ordered to be given into the custody of E. H. Kelley, an inspector of the Georgia prison system, who appeared in court. Immediately after Jenkins was delivered into the custody of Kelly, a new writ of habeas corpus was instituted against E. H. Kelley. After hearing was held on this writ, the trial judge also dismissed it, and, after noting the exceptions of relator's counsel to such action, ordered the matter on the argument list.

After argument and with the records of both proceedings and all exhibits before us, we can now proceed to a final disposition of this case.

Considerable testimony was introduced concerning the criminal procedure followed in the arrest and arraignment of Jenkins in Georgia and as to the inhuman treatment received by him at the hands of the officers and guards in the Georgia penal system. Despite the vigorous dissent in Commonwealth ex rel. Brown v. Baldi, 378 Pa. 504 (1954), we are precluded from considering either of these questions by reason of the majority opinion in that case. We do not give full faith to Georgia's laws and actions if we attack the procedure employed in the arrest or conviction of

relator or if we question the safeguards afforded by Georgia's courts, constitution and laws.

The only question raised which may be considered by this court is the validity of the extradition papers and proceedings. If the requirements of the Uniform Criminal Extradition Act have been fully and carefully followed, if the papers are complete and otherwise in order, then this court must uphold the request of Georgia and the directions of the Governor of this Commonwealth. See Commonwealth ex rel. Hatton v. Dye, 373 Pa. 502 (1953).

Section 3 of the Uniform Act, adopted in Pennsylvania as section 3 of the Act of July 8, 1941, P. L. 288, 19 PS §191.3, sets forth the requisite form of demand. It provides:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing, alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime . . . and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon or by a copy of a judgment of conviction or of a sentence imposed in execution thereof . . . the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

It is to be noted that this section provides: "No demand . . . shall be recognized unless . . ." By setting forth the formal requisites for a valid extradition demand in this form, the draftsmen have made it clear that such requirements are mandatory. Furthermore, in view of the fact that full faith and credit narrowly limits the scope of inquiry of the courts in the detain-

ing State, it is incumbent upon the demanding State to comply strictly with these requirements. It is our duty to see that such proceedings are properly completed, in order and faithful to the mandates of the statute.

It is true that it is important to the harmonious existence and effective coöperation among the States that we do not arbitrarily reject an extradition demand from a State merely because we do not approve of its penal system or because we believe ours is more just and humane. But it is also of paramount importance that we protect the rights and liberty of all citizens, including criminals and those charged with crime. In guaranteeing this latter security we do not unduly endanger harmony and coöperation by requiring strict compliance with the formal requisites of the act. The same careful scrutiny would and should be given by any other State's court to a demand originating in Pennsylvania.

Examining the exhibits submitted in this matter in the light of the above-stated principles, we find that the Governor of Georgia's demand for extradition does not contain an allegation "that the accused was present in the demanding State at the time of the commission of the alleged crime". While it may well be argued that such an allegation is implicit in the allegation that Jenkins stands charged with a crime committed in Bulloch County, Georgia, nevertheless, such implication does not necessarily follow. Other conclusions could be drawn, and lacking the explicit or specific allegation, "no demand . . . shall be recognized".

As we originally viewed the provision of the Uniform Act, this defect alone would have been sufficient reason for directing the discharge of Jenkins. However, the decision of the Supreme Court of Pennsylvania in Commonwealth ex rel. Taylor v. Superintendent, Philadelphia County Prison, 382 Pa. 181, held that "substantial compliance" with the provisions

of the Uniform Extradition Act was sufficient. Although we can foresee difficulty in future cases in determining whether a defective requisition demand does "substantially comply" with the act, we have no such problem in this case for the same defect existed here and in the Taylor case. In the Taylor case the Supreme Court noted the failure of the requisition to specifically allege presence in the demanding state at the time of the alleged crime and concluded that despite this, there was a substantial compliance with the provisions of the act. Justice Arnold also rejected the contention that the original extradition demand should be produced in court in order that the hearing judge might satisfy himself that, as a matter of law, the provisions of the act had been followed. The same procedure, introducing a copy of the extradition demand and an affidavit from the Office of the Secretary of the Commonwealth to the effect that the copy was a true and correct duplicate of the original filed in Harrisburg, was followed in this case.

It is not our intention to rely on or reargue the merits of Judge Levinthal's original decision in the Taylor case. As to the two points decided by the Supreme Court in that case, no real distinction exists here. However, in these extradition proceedings there are additional defects, not present in the Taylor case, the existence of which, in our judgment, precludes the conclusion that this demand substantially complies with the act. Accepting the carbon copy of the extradition demand of Georgia's governor as a true and correct copy of the original, we note that it contains certain changes, alterations and erasures. A red pencil was used to cross out "R. T. Bridges and/or Agent". On the same line a red pencil was also used to write "E. H. Kelley", which writing was then almost completely erased. Superimposed on this erasure is the typewritten phrase, "and/or E. H. Kelley", and this

latter typing was done with a different typewriter or a different carbon than the rest of the words which are typed in on this copy of the requisition form. No satisfactory explanation was given as to who made these alterations, when they were made, and by whose authority. It would appear that these changes were made either some time after Governor Talmadge signed the original extradition demand or after they had been forwarded to Pennsylvania, for the warrant of the Governor of Pennsylvania directs the arrest of relator and his delivery to "R. T. Bridges". This warrant is under the seal of the State of Pennsylvania and the signature of its governor, dated April 15, 1953. Our conclusion that these alterations were made some time after the original demand was signed and forwarded is borne out by the supplemental commission from the new Governor of Georgia (Governor Griffin), dated March 8, 1955, appointing E. H. Kelley as agent to bring back Jenkins.

Furthermore, section 7 of the Uniform Act (19 PS §191.7) directs the governor to sign and seal, with the State seal, a warrant of arrest if he "decides that the demand should be complied with . . .". Section 8 (19 PS §191.8) provides:

"Such warrant shall authorize the peace officer or other person to whom directed to arrest the accused . . . *and to deliver the accused*, subject to the provisions of this act, *to the duly authorized agent of the demanding state.*" (Italics supplied.)

The Governor of Pennsylvania's warrant directs delivery to Bridges. Bridges did not appear and Jenkins is presently in the custody of Kelley. Neither is it clear who is the duly authorized agent. By reason of the erasures, alterations and supplemental commission it would appear that Kelley is now supposed to be the agent, but it is not clear that he is duly authorized, and the warrant of the Governor of Penn-

sylvania does not authorize the delivery of Jenkins into the custody of Kelley. The authority of the peace officer to arrest and deliver over arises from the warrant of the governor as directed by the above-cited provisions of the statute. Under the command of the warrant of the Governor of Pennsylvania, Jenkins is to be delivered to "R. T. Bridges", and therefore, release of Jenkins into the custody of Kelley was in violation of the order of the governor and the provisions of the statute. For this reason and the other reasons set forth above, relator is entitled to be discharged from the restraint to which he is subject by reason of the extradition proceedings.

And now, June 9, 1955, it is ordered, adjudged and decreed that relator's exceptions to the court's discharge of the writ are sustained; the petition is granted, and relator, Clifford Jenkins, discharged.